## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOIS JEAN BRENNAN, | CASE NO. 4:15-cv-01176-MWB-GBC |
| Plaintiff, | (JUDGE BRANN) |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | Docs. 1, 8, 9, 10, 11, 12 |

## REPORT AND RECOMMENDATION

### I.      Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Lois Jean Brennan ("Plaintiff") for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.*[1] (the "Regulations"). Plaintiff's only argument on appeal is that the ALJ should have adopted her treating psychiatrist's medical opinion into the residual functional capacity. (Pl. Brief).

---

[1] Part 404 governs DIB, Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

The ALJ "must...adopt" any medical opinion entitled to controlling weight. SSR 96-5p. The Regulations afford special deference to treating sources ("treating source rule").[2] The ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence. *See* 20 C.F.R. §404.1527(c)(2). The Third Circuit consistently holds that lay reinterpretation of medical evidence is not substantial evidence to decline to adopt a treating source medical opinion. *Burns v. Colvin,* No. 1:14–CV–1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (internal citations omitted). The Third Circuit has also held that a medical opinion from a non-treating, non-examining source who did not review a complete record was "not substantial." *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000); *see also Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008). In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit affirmed where there were two non-treating opinions, one from a source who reviewed the entire record. *Id.*

---

[2] The Court notes that, on September 9, 2016, the SSA proposed to eliminate the treating source rule and stop providing special deference to treating sources. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560-01 ("we would consider the persuasiveness of medical opinions and prior administrative medical findings from all medical sources equally using the factors discussed below. We would not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion, including from an individual's own healthcare providers"). This proposed revision is contained in a Notice of Proposed Rule Making and the comment period has not yet closed, so it is unclear whether the SSA will adopt this change.

This case law is consistent with SSR 96-6p, which provides that an ALJ may only credit a non-treating, non-examining source over a treating source in "appropriate circumstances," such as when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This is only one example of "appropriate circumstances," but the phrase should be construed as requiring a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("the general term should be understood as a reference to subjects akin to the one with specific enumeration"). SSR 96-6p is consistent with SSR 96-2p, which provides that "in cases at the administrative law judge (ALJ) or Appeals Council (AC) level, the ALJ or the AC may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." *Id. Morales*, *Brown*, and SSR 96-6p are all consistent with the prohibition on lay reinterpretation of evidence, because a source who reviews a complete record obviates the need for the ALJ to reinterpret medical evidence.

Here, the non-examining, non-treating source did not technically review a complete record. Doc. 9. However, the non-examining source reviewed almost all

of the record, the subsequent medical records contained no new objective findings or diagnoses, and the ALJ properly evaluated the credibility of Plaintiff's subjective claims and the other non-medical evidence. Doc. 9. The non-examining, non-treating source did not mischaracterize the record or make other errors. Doc. 9. Consistent with *Brown*, the non-examining, non-treating source provides substantial inconsistent evidence to assign less than controlling weight to the treating source medical opinion.

Addressing the controlling weight provision does not end the inquiry. Even when not assigned controlling weight, treating source medical opinions are entitled to deference and the ALJ must provide "good reasons" to assign greater weight to a non-treating opinion. 20 C.F.R. §404.1527(c)(2). Here, the ALJ provided good reasons. In addition to citing the non-treating source opinion, the ALJ properly concluded that the treatment record contradicted the treating source. The treating source opined that Plaintiff's symptoms included suicidal ideation, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking. (Tr. 411-13). At each visit, Plaintiff reported that her delusions, hallucinations, disorganized behaviors, disorganized thinking, and paranoia had all "resolved." (Tr. 391, 464-83). She denied suicidal ideation at every visit. (Tr. 391, 464-83). At every visit, mental status examinations indicated normal attention and concentration. (Tr. 391, 464-83). The treating source opined that Plaintiff had "a persistent irrational fear

of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation" and "recurrent obsessions or compulsions which are a source of marked distress," and "recurrent and intrusive recollections of a traumatic experience which are a source of marked distress." (Tr. 414). However, at every visit, Plaintiff "denie[d] and [did] not demonstrate any symptoms of... obsessive/compulsive behaviors." (Tr. 392, 464-83). These observations did not require the ALJ to interpret raw medical data or draw inappropriate inferences.

The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Here, the Court would not direct a verdict in Plaintiff's favor. For the foregoing reasons, the Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.     Procedural Background

On August 20, 2012, Plaintiff applied for DIB. (Tr. 103-06). On November 1, 2012, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 67-77), and Plaintiff requested a hearing. (Tr. 84-85). On January 7, 2014, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 31-66).  On February 21, 2014, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 10-30). Plaintiff requested review with the Appeals Council (Tr. 8-9), which the Appeals Council denied on March 18, 2015, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 2-7). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On June 15, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On August 18, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 8, 9). On October 2, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 10). On October 23, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 11). On November 6, 2015, Plaintiff filed a brief in reply. ("Pl. Reply"). (Doc. 12). On January 12, 2016, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20

C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a

refusal to direct a verdict.'" *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## IV.    Relevant Facts in the Record

### A.    Background

The administrative record in this case is 517 pages long. Doc. 9. Plaintiff was born in 1955 and was classified by the Regulations as a person of advanced age through February 21, 2014, the date of the ALJ decision. (Tr. 13-26); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a nursing home housekeeper. (Tr. 25). Plaintiff established medically determinable, severe impairments of diverticulitis, a history of venous insufficiency, hypertension, hyperthyroidism, major depressive disorder and anxiety disorder. The ALJ found that Plaintiff could perform simple work with only occasional interaction with the public, which would allow her to perform her past relevant work. (Tr. 25). The VE also testified that if Plaintiff was further limited to occasional interaction with supervisors and coworkers, Plaintiff could also perform her past relevant work. (Tr. 56). Plaintiff's appeal addresses only her mental impairments. (Pl. Brief).

### B.    Non-Treating Source Medical Opinion

On  September 26, 2012, , non-treating, non-examining source Dr. Galdieri reviewed Plaintiff's file and authored an opinion. (Tr. 67-71). Dr. Galdieri opined

that she had no more than moderate mental limitations. (Tr. 67-71). Dr. Galidieri cited two treatment records, from July 9, 2012 with psychiatrist Dr. Boriosi, and August 31, 2012, with new treating psychiatrist Dr. Matthew Berger, M.D., that indicated Plaintiff was "improved," had no symptoms of ADHD, exhibited only depression on examination, and Plaintiff's report that she could perform activities like caring for her personal hygiene, riding as a passenger in a car, travel alone, do chores, shop, and socialize. (Tr. 70, 391, 401). Dr. Berger's August 31, 2012 treatment note also indicates that Plaintiff reported crying, delusions, hallucinations, disorganized behaviors, disorganized thinking, and paranoia had all "resolved." (Tr. 391). Aside from depression, mental status examinations was normal, with cooperative attitude, normal speech, coherent and logical thought processes, intact memory, normal attention and concentration, and intact insight and judgment. (Tr. 391).

### C.    Medical Records, Function Reports, and Testimony

Dr. Galdieri accurately characterized the evidence submitted prior to the opinion. Prior to Dr. Berger's August 31, 2012 treatment note, Plaintiff had reported worsening anxiety to her primary care provider in July of 2012, and was hospitalized in August of 2012 for psychiatric impairments. (Tr. 273-93, 315). In August of 2012, she was placed on a combination of three medications that she would take through the remainder of the relevant period: Geodon, Prozac, and

Xanax. (Tr. 273-93, 316). By August 29, 2012, less than four months after her alleged onset date, she reported to her primary care physician that she was "less anxious." (Tr. 320).

On September 4, 2012, Plaintiff submitted a Function Report in support of her claim for benefits and reported intense changes in emotions, schizophrenia symptoms, difficulty concentrating, social isolation, panic attacks, problems with memory, difficulty understanding instructions, an inability to finish tasks, and problems handling stress or changes in routine. (158-70). Plaintiff's sister, son, and friend submitted letters containing similar reports. (Tr. 184-88).

The records submitted after Dr. Galdieri and Dr. Potera authored their opinions contain treating source medical opinions from Dr. Berger and from Dr. Haley supporting Plaintiff's claim for benefits, updated treatment records from Dr. Berger and Dr. Haley, and medical records from Marian Community Hospital. (Tr. 411-517). The Marian Community Hospital Records consist of laboratory and radiology reports that generally indicate normal physical findings. (Tr. 491-517). Dr. Haley's updated records indicated that a cardiologist opined that Plaintiff needed only a "low dose" beta blocker and did not need invasive cardiac testing. (Tr. 449). In September of 2012, Plaintiff had hand tremors with sustenation but denied neurological and musculoskeletal symptoms. (Tr. 418-19). In February of 2013, Plaintiff reported to Dr. Haley that she had applied for disability "due to

mental issues," and Dr. Haley agreed that she was "unable to work." (Tr. 421). Plaintiff denied neurological or musculoskeletal symptoms and Dr. Haley did not examine her extremities. (Tr. 421). In May of 2013, Plaintiff denied neurological or musculoskeletal symptom, examination of the extremities was normal, and there were no tremors with sustenation. (Tr. 426-27). On October 14, 2013, Plaintiff denied neurological and musculoskeletal symptoms. (Tr. 428). Providers noted that a PIXI bone density scan "was 1.5" (Tr. 428). Plaintiff does not identify where the PIXI scan is located in the record, and an earlier DEXA bone density scan, from June of 2012, had been normal. (Tr. 348). On October 31, 2013, Plaintiff reported "bilateral carpal tunnel" for the first time, and the same day, and Dr. Haley opined that it was "debilitating" and she was "totally disabled" as a result. (Tr. 432-33).

Dr. Berger's updated records contain treatment notes from September, October, and November of 2012, and January, May, August, and November of 2013. (Tr. 464-83). At each visit, Plaintiff reported that her crying, delusions, hallucinations, disorganized behaviors, disorganized thinking, and paranoia had all "resolved." (Tr. 464-83). Aside from occasional depression or anxiety, mental status examinations were normal, with cooperative attitude, normal speech, coherent and logical thought processes, intact memory, normal attention and concentration, and intact insight and judgment. (Tr 464-83). In October and November of 2012 and January of 2013, Plaintiff exhibited no depression or

anxiety. (Tr. 464-83). Plaintiff's GAF ranged from 50-58. (Tr 464-83). Plaintiff denied symptoms of bipolar disorder and medication sides effects at each visit. (Tr. 464-83). Plaintiff treated with Klonopin, Prozac, and Geodon at each visit, at the same dose aside from an increase in Prozac in October of 2012. (Tr. 464-83). At every visit, Plaintiff "denie[d] and [did] not demonstrate any symptoms of...obsessive/compulsive behaviors." (Tr. 392, 464-83).

On January 4, 2014, Plaintiff testified in support of her claim for benefits that she continued experiencing panic attacks, auditory hallucinations, problems concentrating, and rambling and incoherent speech. (Tr. 31-50).

### D.    Treating Source Medical Opinions

In February of 2013, Dr. Berger opined that  Plaintiff's symptoms, allegedly including suicidal ideation, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking, would cause marked limitations in social function, concentration, and episodes of decompensation. (Tr. 411-13). Dr. Berger did not sign this opinion. (Tr. 414, 417). In November of 2013, Dr. Berger submitted a signed medical opinion. (Tr. 417). Dr. Berger opined that Plaintiff had "generalized persistent anxiety" characterized by motor tension and apprehensive expectation with "a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation," "recurrent severe panic attacks manifested by a sudden unpredictable onset of

intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once per week," "recurrent obsessions or compulsions which are a source of marked distress," and "recurrent and intrusive recollections of a traumatic experience which are a source of marked distress." (Tr. 414).

In October of 2013, Dr. Haley opined that Plaintiff could sit, stand, or walk for eight hours out of an eight-hour workday, but bilateral carpal tunnel syndrome "constantly" interfered with her ability to concentrate and caused hand numbness and weakness. (Tr. 435). Dr. Haley opined that Plaintiff's hand symptoms would require additional unscheduled breaks during the workday and would preclude grasping, fine manipulations, pushing, and pulling. (Tr. 436-37). Dr. Haley opined that Plaintiff could not lift more than five pounds occasionally. (Tr. 436). On December 19, 2013, Dr. Haley opined that Plaintiff could not sit, stand, or walk for more than four hours in an eight-hour workday, could lift only less than ten pounds occasionally, would have to walk around every ten minutes for at least ten minutes, could not perform any postural activities or activities with her upper extremities, and would be absent more than four days per month. (Tr. 487) Dr. Haley cited Plaintiff's "longstanding, progressive psychological and physical disabilities," her palsy, "psychological and medical/physical disability," and "history and physical." (Tr. 486-87).

## V.    Plaintiff Allegations of Error

### A.    Mental Health Treating Source Medical Opinion

#### 1.    Plaintiff Allegations

In this appeal, Plaintiff challenges only the weight assigned to the opinions of Dr. Berger, her treating psychiatrist. (Pl. Brief). Plaintiff cites her July 2012 report of anxiety to Dr. Haley and Dr. Berger's initial report, during her hospitalization, of loosening associations, delusions, hallucinations, paranoia, and impaired attention. (Pl. Brief at 5-7). Plaintiff notes that she continued reporting subjective symptoms to Dr. Berger through the relevant period, but does not acknowledge that she never again reported loosening of associations, delusions, hallucinations, paranoia or other psychotic symptoms. (Pl. Brief at 7-8). Plaintiff also cites Plaintiff's sister's report. (Pl. Brief at 8).

Plaintiff asserts that the ALJ erred in finding her activities of daily living contradicted Dr. Berger's opinions. (Pl. Reply at 1-3). The Court agrees. However, "whether the error is harmless depends on whether the other reasons cited by the ALJ…provide substantial evidence for her decision." *Brumbaugh v. Colvin,* 3:14–CV–888, 2014 WL 5325346, at *16 (M.D.Pa. Oct. 20, 2014). Here, the ALJ also relied on Dr. Galdieri's opinion, noted that Dr. Galdieri's opinion was more consistent with her "treatment history," elsewhere described as "conservative," and cited normal findings on mental status examination. (Tr. 22-24).

Plaintiff asserts that the ALJ erred in failing to write down how he considered Dr. Berger's specialization. (Pl. Brief at 9). First, Plaintiff asserts that Dr. Berger should be credited because he is a specialist in mental health, but does not acknowledge that Dr. Galdieri is also a specialist in mental health. (Pl. Brief at 8-9). Second, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p; *see also Phillips v. Barnhart*, 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons ... for the weight ... give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis…Procedurally, the regulations require no more.") (internal citations omitted).

If explanation allows meaningful judicial review, it suffices. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a

particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."); *Hur v. Comm'r Soc Sec.*, 94 F. App'x130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its  opinion every tidbit of evidence included in the record").

Plaintiff asserts that the Regulations provide that the ALJ "will" give the treating source greater weight if the treating physician "has reasonable knowledge" of the claimant's impairments. (Pl. Reply at 4). As discussed below, this is not the correct standard. An ALJ may assign greater weight to a non-treating source in any appropriate circumstance; the weight assigned to a treating source is not determined by the single factor of "reasonable knowledge" identified by the Plaintiff. *See* SSR 96-6p.

Plaintiff notes that Dr. Galdieri did not review "the entire record." (Pl. Brief at 10) (Pl. Reply at 4). However, Dr. Galdieri reviewed the functional equivalent of a complete record. Subsequent mental health records contained no new findings, diagnoses, or subjective reports of symptom exacerbation. The only difference between Dr. Berger's August 31, 2012 treatment record and subsequent treatment records were the higher GAF scores in subsequent records. (Tr. 392, 464-83). There were no new diagnoses or objective findings on mental status examination. (Tr. 392, 464-83). Plaintiff's medications remained the same, at the same dosage,

aside from an increase in Prozac in October of 2012. (Tr. 392, 463-84). Relying on Dr. Potera's opinion did not require the ALJ to reinterpret medical evidence.

The ALJ was also not required to draw inferences from medical data in order to find that Dr. Berger's treatment record contradicted his opinion. Dr. Berger opined that Plaintiff's symptoms included suicidal ideation, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking. (Tr. 411-13).At each visit, Plaintiff reported that her delusions, hallucinations, disorganized behaviors, disorganized thinking, and paranoia had all "resolved." (Tr. 391, 464-83). She denied suicidal ideation at every visit. (Tr. 391, 464-83). At every visit, mental status examinations indicated normal attention and concentration. (Tr. 391, 464-83). Dr. Berger opined that Plaintiff had "a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation" and "recurrent obsessions or compulsions which are a source of marked distress," and "recurrent and intrusive recollections of a traumatic experience which are a source of marked distress." (Tr. 414). However, at every visit, Plaintiff "denie[d] and [did] not demonstrate any symptoms of... obsessive/compulsive behaviors." (Tr. 392, 464-83).

Plaintiff asserts that the record "consistently" showed flat affect, poor eye contact, tremors, anxiety, or depression, but, after Plaintiff's August 2012 hospitalization, these findings only appeared occasionally, with multiple mental

status examinations revealing entirely normal findings. (Pl. Brief at 10). Mental status examinations support the ALJ's conclusion that Plaintiff's mental symptoms were not disabling within the meaning of the Act, which requires a twelve-month duration. Plaintiff asserts that the ALJ was not entitled to rely on the GAF scores. However, the ALJ is required to evaluate all medical opinions, and defer to medical opinions by treating sources. The Regulations provide a "broad definition" of medical opinion. *See Wrights v. Colvin*, No. 3:13-CV-02516-GBC, 2015 WL 2344948, at *10 (M.D. Pa. May 14, 2015) (citing 20 C.F.R. §1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.")). GAF scores fall within this definition.[3]  GAF scores are more probative of non-disability than disability. This is because:

---

[3] *Schwartz v. Colvin*, 3:12-CV-01070, 2014 WL 257846 at *5, n. 15 (M.D. Pa. Jan. 23, 2014) ("The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness… A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning.. A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships") (citing *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed.1994).

> The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. The score is useful in planning treatment and predicting outcomes. *Id.* The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if *either* the symptom severity *or* the social and occupational level of functioning falls within that range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the *worse* of the two.

*Schwartz v. Colvin*, 3:12-CV-01070, 2014 WL 257846 at *5, n. 15 (M.D. Pa. Jan. 23, 2014). Thus, a GAF score of 55 indicates that neither the claimant's functional impairment nor symptoms are more than moderate. *Id.* Here, on all but one treatment date after Plaintiff's August 2012 hospitalization, Plaintiff's GAF scores were in the "moderate" range, meaning that Plaintiff could not be more than moderately impaired in occupational function. *Supra.* Again, the GAF scores support the ALJ's conclusion that Plaintiff's mental symptoms were not disabling within the meaning of the Act, which requires a twelve-month duration. *Supra.*

Plaintiff fails to demonstrate that no reasonable person would have relied on Dr. Galdieri's opinion, who reviewed records containing all of the pertinent objective findings and diagnoses, Dr. Galdieri's interpretation of the mental status examinations, and her conservative treatment to find that she had no more than moderate mental health limitations. The Court would not direct a verdict in

Plaintiff's favor if the case were before a jury. As discussed in more detail below, the Court does not recommend remand on these grounds.

## 2.    Controlling Weight

Dr. Berger was an acceptable medical source. 20 C.F.R. §404.1527(a); (Tr. 486-87). Dr. Berger was also a treating source because Dr. Berger treated Plaintiff "a number of times and long enough to have obtained a longitudinal picture of [Plaintiff's] impairment[s]." 20 C.F.R. § 404.1527(c)(2).  Dr. Berger's statement is a medical opinion "on the issue(s) of the nature and severity of [Plaintiff's] impairment(s)," and was not a statement on an issue reserved to the Commissioner. 20 C.F.R. §404.1527(c)(2). Thus, the ALJ must assign Dr. Berger's opinion controlling weight if it is well-supported and not inconsistent with other substantial evidence. *Id.* The Court finds that the ALJ developed substantial inconsistent evidence, so Dr. Berger's opinion was not entitled to controlling weight. The Court addresses the extent to which Dr. Berger's opinion was supported in the analysis of the 20 C.F.R. §404.1527(c)(1)-(6) factors.

The Third Circuit has held that a medical opinion from a non-treating, non-examining source who did not review a complete record was "not substantial." *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).[4] In *Brownawell v. Comm'r Of Soc.*

---

[4] The Social Security Administration abolished the policy of non-acquiescence in 1990 with the promulgation of 20 C.F.R. §404.985. *Id.*  An ALJ must follow all

*Sec.*, 554 F.3d 352 (3d Cir. 2008), the only other precedential decision addressing an ALJ who relied on a non-treating, non-examining source who did not review a complete record to reject a treating source opinion, the Third Circuit also remanded. *See Brownawell*, 554 F.3d at 352. In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit affirmed where there were two non-treating opinions, one from a source who reviewed the entire record. *Id. see also Kreiser v. Colvin*, No. 3:15-CV-1603, 2016 WL 704957, at *13 (M.D. Pa. Feb. 23, 2016) (Noting that expert "reviewed records…through November 2012" and "the record does not appear to contain….treatment records which post date [the expert's] opinion").

In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009), there were three non-treating medical opinions and one treating medical opinion, but the Court held that the non-treating medical opinions did not provide good enough reason to reject the treating source medical opinion because they were "perfunctory" and omitted significant objective findings. *Id.* at 505; *see also Boyer v. Colvin*, No. CV 1:14-CV-730, 2015 WL 6438870, at *9 (M.D. Pa. Oct. 8, 2015) (Non-examining state agency opinion was insufficient to reject treating source opinion where state agency physician "mischaracterized the record"). *Diaz* is consistent with SSR 96-6p, which provides that:

---

precedential Circuit Court decisions if more than 120 days have passed since the decision was issued. *See* 20 C.F.R. §404.985(b).

The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

The case law is consistent with SSR 96-6p, which provides that an ALJ may only credit a non-treating, non-examining source over a treating source in "appropriate circumstances," such as when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This may be only an example of "appropriate circumstances," but the phrase should be construed as requiring a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("the general term should be understood as a reference to subjects akin to the one with specific enumeration").

The ALJ is bound by SSR 96-6p and SSR 96-2p. *See* 20 C.F.R. § 402.35(b)(1) (Social Security Rulings are "binding on all components of the Social Security Administration").   Moreover, *Auer* deference "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166, 183 L. Ed. 2d 153 (2012) (citing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)). SSR 96-6p is the Social Security Administration's interpretation of 20 C.F.R. §404.1527(c), so it is entitled to deference by the Courts.

*Morales*, *Brown*, and SSR 96-6p are all consistent with the prohibition on lay reinterpretation of evidence, because a source who reviews a complete record obviates the need for the ALJ to reinterpret medical evidence. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016); *Tilton v. Colvin*, No. 1:14-CV-02219-YK-GBC, 2016 WL 1580003, at *1 (M.D. Pa. Mar. 31, 2016), *report and recommendation adopted,* No. 1:14-CV-2219, 2016 WL 1569895 (M.D. Pa. Apr. 19, 2016) (citing *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26, 29–30 (3d Cir. 1986); *Ferguson v. Schweiker,* 765 F.2d 31, 37, 36–37 (3d Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano,* 602 F.2d 55, 58–59, (3d Cir. 1979); *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir.

1979); *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir. 1978)). These "cases hold that, even under the deferential substantial evidence standard of review, lay reinterpretation of medical evidence is not inconsistent substantial evidence sufficient to reject an uncontradicted treating source medical opinion." *Id.* (internal quotation omitted); *see also*  Fed.R.Evid. 702, 1972 Advisory Committee Notes ("An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge ...'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute' ") (quoting Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952)). If a non-examining source is able to review the complete case record, the ALJ will not be required to reinterpret the remainder of the record in order to reject a treating source opinion.

Non-medical evidence, like activities of daily living that contradict the opinion, may only provide substantial inconsistent evidence in "extremely rare" cases. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936; *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with

other evidence of record including Claimant's own testimony"); *Kays v. Colvin*, No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014); *Marr v. Colvin*, No. 1:13-cv-2499 (M.D.P.A. April 15, 2015). However, the "non-medical" evidence must be truly "inconsistent" with the opinion. Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936; *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) ("the ALJ's decision fails to explain how Chunn's activities and behaviors are inconsistent with Dr. Ziolkow's characterization of her mental capacity.").

The ALJ properly found that Dr. Berger's opinion was inconsistent with other substantial evidence. The non-medical evidence did not contradict Dr. Berger's opinion. However, Dr. Galdieri's opinion does contradict Dr. Berger's opinion, and this opinion is substantial evidence. Dr. Galdieri opined that she had no more than moderate mental limitations. (Tr. 67-71). Dr. Galidieri cited two treatment records, from July 9, 2012 with psychiatrist Dr. Boriosi, and August 31, 2012, with new treating psychiatrist Dr. Matthew Berger, M.D., that indicated Plaintiff was "improved," had no symptoms of ADHD, exhibited only depression on examination, and Plaintiff's report that she could perform activities like caring for her personal hygiene, riding as a passenger in a car, travel alone, do chores, shop, and socialize. (Tr. 70, 391, 401). Dr. Berger's August 31, 2012 treatment note also indicates that Plaintiff reported crying, delusions, hallucinations, disorganized

behaviors, disorganized thinking, and paranoia had all "resolved." (Tr. 391). Aside from depression, mental status examinations was normal, with cooperative attitude, normal speech, coherent and logical thought processes, intact memory, normal attention and concentration, and intact insight and judgment. (Tr. 391). Dr. Galdieri accurately characterized the evidence submitted prior to the opinion. Prior to Dr. Berger's August 31, 2012 treatment note, Plaintiff had reported worsening anxiety to her primary care provider in July of 2012, and was hospitalized in August of 2012 for psychiatric impairments. (Tr. 273-93, 315). In August of 2012, she was placed on a combination of three medications that she would take through the remainder of the relevant period: Geodon, Prozac, and Xanax. (Tr. 273-93, 316). By August 29, 2012, less than four months after her alleged onset date, she reported to her primary care physician that she was "less anxious." (Tr. 320).

Dr. Galdieri's  opinion is inconsistent with Dr. Berger's opinion. (Tr. 67-71).(Tr. 486-87). In this case, Dr. Galdieri's inability to review the entire record did not require the ALJ to engage in impermissible lay interpretation of medical evidence. *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. Dr. Galdieri reviewed the functional equivalent of a complete record. Subsequent mental health records contained no new findings, diagnoses, or

subjective reports of symptom exacerbation. The only difference between Dr.
Berger's August 31, 2012 treatment record and subsequent treatment records were
the higher GAF scores in subsequent records. (Tr. 392, 464-83). There were no
new diagnoses or objective findings on mental status examination. (Tr. 392, 464-
83). Plaintiff's medications remained the same, at the same dosage, aside from an
increase in Prozac in October of 2012. (Tr. 392, 463-84). Unlike *Diaz*, Dr.
Galdieri's opinion was not "perfunctory" and did not omit significant objective
findings. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). Dr.
Galdieri provided sufficient explanation. *See* SSR 96-6p.

The common theme from SSR 96-6p, SSR 96-2p, 20 C.F.R. §404.1527(c)
and *Brown*, *Diaz*, *Brownawell*, *Morales*, *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van
Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober* is a prohibition on an ALJ undertaking lay
reinterpretation of medical evidence. *See* 20 C.F.R. §404.1527(c)(2); SSR 96-6p;
SSR 96-5p; SSR 96-2p; *Brown*, 649 F.3d at 196; *Diaz*, 577 F.3d at 505;
*Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574 F.2d at 777;
*Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-
37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494;
*Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. When a medical source reviews
essentially all of the medical evidence, the justification for this prohibition
evaporates. The ALJ has provided a reason as compelling as the example in 96-6p

for rejecting the treating source opinion with only a single non-treating, non-examining medical opinion. *See* SSR 96-6p; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration"). Substantial evidence supports the ALJ's assignment of less than controlling weight to the treating source opinion.

### 3.  Factors in 20 C.F.R. §404.1527(c)(1)-(6)

When the Commissioner does not give a treating "opinion controlling weight under paragraph (c)(2) of this section, [the Commissioner] consider[s] all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(c). Specifically, "[w]hen [the Commissioner does] not give the treating source's opinion controlling weight, [the Commissioner] appl[ies] the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of [Section 404.1527], as well as the factors in paragraphs (c)(3) through (c)(6) of [Section 404.1527] in determining the weight to give the opinion." 20 C.F.R. § 404.1527(c)(2). Section 404.1527(c)(2)(i) provides that, "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id.* Section 404.1527(c)(2)(ii) provides that "more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the

source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.* Section 404.1527(c)(1) provides that, "[g]enerally, [the Commissioner] give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Id.* Pursuant to 20 C.F.R. §404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." Pursuant to 20 C.F.R. §404.1527(c)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Pursuant to 20 C.F.R. §404.1527(c)(5), more weight may be assigned to specialists, and 20 C.F.R. §404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion." *Id.*

The ALJ properly analyzed the factors in 20 C.F.R. §404.1527(c)(1)-(6). In this case, 20 C.F.R. §404.1527(c)(1)-(2) support the treating source opinion, because these factors provide greater weight to sources who have examined the claimant and sources who have treated the claimant. 20 C.F.R. §404.1527(c)(6) allows the ALJ to consider other factors which "tend to support or contradict the opinion," such as Plaintiff's conservative treatment. *Id.* Pursuant to 20 C.F.R. §404.1527(c)(4), "the more consistent an opinion is with the record as a whole, the

more weight we will give to that opinion." *Id.* Pursuant to 20 C.F.R. §404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." *Id.*

Here, Dr. Berger's opinion was inconsistent with other record evidence and not supported by other record evidence. Dr. Berger's treatment record contradicted his opinion. Dr. Berger opined that Plaintiff's symptoms included suicidal ideation, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking. (Tr. 411-13).At each visit, Plaintiff reported that her delusions, hallucinations, disorganized behaviors, disorganized thinking, and paranoia had all "resolved." (Tr. 391, 464-83). She denied suicidal ideation at every visit. (Tr. 391, 464-83). At every visit, mental status examinations indicated normal attention and concentration. (Tr. 391, 464-83). Dr. Berger opined that Plaintiff had "a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation" and "recurrent obsessions or compulsions which are a source of marked distress," and "recurrent and intrusive recollections of a traumatic experience which are a source of marked distress." (Tr. 414). However, at every visit, Plaintiff "denie[d] and [did] not

demonstrate any symptoms of... obsessive/compulsive behaviors." (Tr. 392, 464-83).

The Regulations require the ALJ to "consider" each factor in assigning weight to the medical opinions. 20 C.F.R. §404.1527(c). However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p. *See also Phillips v. Barnhart,* 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quotin*g Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)). Thus, an ALJ must provide some written explanation for the assignment of weight, but does not need to cite each factor considered in the analysis. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons ... for the weight ... give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis. Here, the ALJ acknowledged Dr. Wakham's role as Francis's "treating family osteopath." In assigning no weight to his opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more.") (internal citations omitted).

If explanation allows meaningful judicial review, it suffices. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."); *Hur v. Comm'r Soc Sec*., 94 F. App'x130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its  opinion every tidbit of evidence included in the record").

Here, as discussed above, the ALJ's explanation sufficed for meaningful review. *Supra.* The ALJ provided specific explanations supported in the record and cited to specific treatment notes that contradicted the opinions. *Supra.* The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

Here, the Court would not direct a verdict in Plaintiff's favor. Substantial evidence supports the ALJ's assignment of weight to the medical opinions.

## B.    Other Allegations of Error

Plaintiff does not allege that the ALJ made any errors aside from evaluating the medical opinions. (Pl. Brief); Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs."). The Court does not recommend remand on any other grounds.

## VI.    Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Here, a reasonable mind might accept the relevant evidence as adequate. The Court would not direct a verdict in Plaintiff's favor if the issues were before a jury.  Accordingly, it is HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: September 14, 2016                    _____s/Gerald B. Cohn_____
                                             GERALD B. COHN

UNITED STATES MAGISTRATE JUDGE